UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       **Plaintiff,**<br>   v.<br><br>FELIPE CONTRARES VARILLAS,<br><br>       **Defendant.** | Case No. 1:26-cr-53 (TSC) |

### SENTENCING MEMORANDUM AND REQUEST TO IMPOSE A SENTENCE OF TIME-SERVED

Mr. FELIPE CONTRERAS VARILLAS offers this Sentencing Memorandum addressing the sentencing factors pursuant to 18 U.S.C. §3553(a) factors in support of his request for a sentence of **TIME SERVED** to run concurrently to any sentence imposed in his case presently pending sentencing before D.C. Superior Court under docket number 2026-CF1-684.[1]

There are no objections from either party that Mr. Contreras's properly calculated advisory guideline range, as listed in his PSR, is six to 12 months.[2] As Mr. Contreras has been in continuous custody since his initial arrest on January 12, 2026, this Court imposing a sentence of time-served would effectively be just two days shy of the low-end of his guidelines range – and Probation's recommended sentence[3] – on the date of sentencing. Furthermore, data from the U.S. Sentencing Commission's Judiciary Sentencing Information ("JSIN") database shows that of the

---

[1] Final Pre-Sentence Report ("PSR"), **Doc. 17**, ¶24.

[2] *See id*. at ¶51

[3] *See* **Doc. 18**.

1,535 defendants nationwide with identical guidelines range, six months was both the average and median length of imprisonment imposed.[4]

### IMMIGRATION AND FELIPE CONTRERAS

Felipe Contreras came to the United States nearly 10 years ago, when, like so many other immigrants to the United States, he aspired to leave behind a life of chronic underemployment and low wages in his home in the rural outskirts of Puebla, Mexico for the hope of a brighter future in the United States. His first attempt to enter the U.S., in 2016, resulted in his expedited removal when he was stopped by border patrol along the U.S. border with Mexico.[5] His experience caused him to put aside his dreams of settling and working in the United States and returned home to the rural foothills outside of Puebla. He found occasional work in construction and factories nearby his family home, but even when he was consistently working it was back-breaking, brutal work in unsafe conditions paying him only about $1,400 Mexican Pesos a week – amounting to less than $80 in U.S. currency today.[6] Even though Felipe had been steadfastly supporting his family, having started helping his father on the family's humble farmlands at just 8-years-old, but as he grew into adulthood he realized even the humble lifestyle of his parents was becoming harder and harder to obtain.

"The work, the opportunities, are very little for someone like me from the fields," Felipe said.[7] "That's why there are so many who will risk coming across the desert and the border for a better life in the United States."

---

[4] U.S. SENT'G COMM'N, Judicial Sentencing Information, calculated on July 1, 2026 (online at jsin.ussc.gov).
[5] PSR, ¶26.
[6] *Id*. at ¶45.
[7] All quotes attributed to Felipe Contreras Varillas are taken verbatim from interviews with Defense Counsel.

The next year, Felipe successfully entered the United States, albeit illegally.

"For my part, I did not even know how someone gets (lawful immigration) papers," Felipe said, "I suppose we all just thought you needed to be rich … otherwise you cross the border on foot."

Felipe chose to settle in Washington, D.C., where his older brother had been living for a couple of years. When he arrived to Washington D.C. in late 2017, he threw himself into his work, spending well over 40 hours per week working in various restaurants across the district.[8] While he started as a food runner and busser who clears off tables, he slowly gained additional skills – eventually moving up to working in the kitchen preparing the food, which Felipe found to be his true calling.

"I cooked several kinds of food … some places more informal, others that were expensive," Felipe said, listing out his culinary experience ranged from Spanish and Cuban to even Canadian food. "Oh but I'm best with Mexican," Felipe added.

The money was far better than what he could ever earn in Mexico, and Felipe and his brother both saw it as their obligation to help support their parents and extended family still in Puebla.

But life was not easy. Outside of occasional restaurant closures and finding new work, Felipe was hit hard by the COVID-19 pandemic. What first started as a devastating lack of work when all the restaurants closed ultimately became a fight for his life when he contracted COVID-

---

[8] *See* PSR at ¶44.

19 in the early days of the pandemic. Felipe experienced severe illness from the virus and was hospitalized for two weeks, at one point being placed on a ventilator.[9]

"Thank God, I got better and I was able to go home," Felipe said, adding that even after overcoming COVID he faced a dearth of employment with so many restaurants closed or operating at minimal capacity. Due to his legal status, he never received any public assistance. "You just fight through it and find ways to live."

Most importantly, across nearly a decade living and working in Washington D.C., Felipe had zero prior contacts with law enforcement – even for minor infractions.

"I just worked, work was my life, that's why I was here," Felipe said. "This was the biggest mistake of my life."

On the date of sentencing, Felipe will have spent the last six months in continuous custody; his only prior experience of anything similar was when he was in border patrol custody for about 24 hours before his removal to Mexico.

While his brother is aware of his current status, Felipe has not been able to speak with his parents or siblings since his arrest, a fact that sits with him every day he has spent incarcerated.

"Right now, I just want to take accountability for my errors and to just be able to go back to be with my family in Mexico," Felipe said. "I'm not coming back to the United States after this experience."

## CONCLUSION

---

[9] *Id.* at ¶37.

Due to the presence of a final order of removal already lodged against him, Felipe Contreras will be deported to his home country of Mexico upon the completion of this sentence and any sentence imposed in D.C. Superior Court.

For someone who had never been in custody longer than 24 hours, the six months that Mr. Contreras has already spent is a severe penalty that has already served to deter any further intention of re-entering the United States. The fact that Mr. Contreras has had to serve this time at the D.C. Jail, where he reported witnessing firsthand severe violence and drug use among the other inmates while simultaneously seeing very limited programming and educational options has made his period of incarceration far more difficult than the average person serving a sentence with BOP.

As previously noted, a sentence of time served would be only two days shy of the low-end of his guidelines, the average sentence nationwide for similarly-situated defendants and Probation's recommended term of incarceration. Mr. Contreras's total lack of prior criminal history over nearly a decade living and working in the United States and the inevitability of his removal from the United States upon the completion of his sentence, combine with all these relevant sentencing factors to support this Court imposing a sentence of time served, concurrent with his matter in D.C. Superior Court.

Respectfully submitted,

A. J. Kramer
Federal Defender

____/s/_____
Scott J Krischke, #5015771 (NY)
Assistant Federal Defender
625 Indiana Ave., N.W., Suite 550

Washington, D.C.  20004
(202) 208-7500
Scott_Krischke@fd.org